CONSOLIDATED KANSAS CITY SMELTING & REFINING CO. *v.* UNITED STATES (No. 427).[1]

1. TARIFF HEARINGS, RELEVANCY OF PROCEEDINGS AT.
   In determining the intention with which language has been employed in a paragraph of a tariff act some ambiguity therein must be apparent to warrant a resort to the "side lights" obtainable from tariff hearings.

2. LEAD-BEARING AND ZINC-BEARING ORES.
   A commodity, it is true, is properly assessable in its condition as imported, but where ore, as here, is shown to have contained, as imported, both lead and zinc, the zinc appearing in a quantity exceeding 10 per cent, the metal content in both is dutiable, the lead under paragraph 181, the zinc under paragraph 193, tariff act of 1909.

United States Court of Customs Appeals, April 10, 1911.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 7049 (T. D. 30727).

[Affirmed.]

*Brown & Gerry* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers affirming the assessment of duty made by the collector upon merchandise imported at the port of El Paso, Tex.

The merchandise in question consists of a number of shipments of ore from Mexico, each shipment containing lead in large or small percentage and each containing over 10 per cent of zinc. All were assessed with duty on both the lead and the zinc contents under para-

[1] Reported in T. D. 31509 (20 Treas. Dec., 764).

graphs 181 and 193 of the act of 1909.   These paragraphs read as follows:

181.  Lead-bearing ore of all kinds, one and one-half cents per pound on the lead contained therein: *Provided*, That on all importations of lead-bearing ores the duties shall be estimated at the port of entry, and a bond given in double the amount of such estimated duties for the transportation of the ores by common carriers bonded for the transportation of appraised or unappraised merchandise to properly equipped sampling or smelting establishments, whether designated as bonded warehouses or otherwise.   On the arrival of the ores at such establishments they shall be sampled according to commercial methods under the supervision of Government officers, who shall be stationed at such establishments, and who shall submit the samples thus obtained to a Government assayer, designated by the Secretary of the Treasury, who shall make a proper assay of the sample and report the result to the proper customs officers, and the import entries shall be liquidated thereon, except in case of ores that shall be removed to a bonded warehouse to be refined for exportation as provided by law.   And the Secretary of the Treasury is authorized to make all necessary regulations to enforce the provisions of this paragraph.

193.  Zinc-bearing ore of all kinds, including calamine, containing less than ten per centum of zinc, shall be admitted free of duty; containing ten per centum or more of zinc and less than twenty per centum, one-fourth of one cent per pound on the zinc contained therein; containing twenty per centum or more of zinc and less than twenty-five per centum, one-half of one cent per pound on the zinc contained therein; containing twenty-five per centum of zinc or more, one cent per pound on the zinc contained therein: *Provided*, That on all importations of zinc-bearing ores the duties shall be estimated at the port of entry, and a bond given in double the amount of such estimated duties for the transportation of the ores by common carriers bonded for the transportation of appraised or unappraised merchandise to properly equipped sampling or smelting establishments, whether designated as bonded warehouses or otherwise.   On the arrival of the ores at such establishments they shall be sampled according to commercial methods under the supervision of Government officers, who shall be stationed at such establishments, and who shall submit the samples thus obtained to a Government assayer, designated by the Secretary of the Treasury, who shall make a proper assay of the sample and report the result to the proper customs officers, and the import entries shall be liquidated thereon, except in case of ores that shall be removed to a bonded warehouse to be refined for exportation as provided by law.   And the Secretary of the Treasury is authorized to make all necessary regulations to enforce the provisions of this paragraph.

The importer claimed that it was improper to assess duty under both paragraphs, and that these ores were imported and smelted merely for the lead contents and should therefore be assessed with duty only under paragraph 181—the lead paragraph.   The Board of General Appraisers overruled the importer's claim and sustained the action of the collector.

It is contended by the appellant that the records of the tariff hearing (vol. 3, p. 2612) show that the question was presented to Congress of specifically providing that where both lead and zinc appeared the ore should pay duty on both the lead and zinc contained, and that as the proposed amendment was not adopted the inference should be drawn that Congress intended that the ore should not be taxed for

both the lead and zinc content.   The record of the tariff hearing shows that there was presented a proposed amendment to the law, reading as follows:

Lead-bearing ores of all kinds, 1½ cents per pound on lead contained therein; zinc-bearing ores of all kinds, 1½ cents per pound on the zinc contained therein: *Provided,* That all ores imported which contain both lead and zinc shall pay 1½ cents per pound on lead contained therein and also 1½ cents per pound on the zinc contained therein.

This proposed amendment was not adopted by Congress, but the language actually employed was that appearing in the sections quoted above.   We can not regard this incident as controlling unless we shall find such ambiguity in the language employed as justifies resort to side lights.   Many reasons might have suggested themselves to the Members of Congress why this particular language should not be employed, and among them is that it was thought best to exempt zinc-bearing ores entirely from duty where they contained less than 10 per cent of zinc.

It is next contended that lead-bearing ores and zinc-bearing ores are distinctly different articles of commerce, and that where the lead ore is recovered the zinc is not and where the zinc ore is recovered the lead is not.   To place a construction upon the statute which would confer upon the importer the privilege of determining for himself to which use he would put the ores bearing both lead and zinc is perhaps possible, but before such a construction should be adopted we ought to be convinced that the intention of Congress vesting this privilege in the importer is made to clearly appear by the enactment.

It is said in the brief of counsel that we have a case showing that lead ore as it occurs in nature with a lower zinc content than 35 per cent can only be smelted for lead, whereas zinc ore is concentrated to increase the zinc content, and the lead present is penalized and lost.

We think this is a misapprehension of the record.   Prof. Hoffman, a witness called for the importer, testified:

A. In zinc-smelting plants in the Joplin district there is a certain standard which forms the starting point from which zinc ores are judged, and zinc ores to be up to the Joplin standard, as it it generally called, must have 60 per cent of zinc.

Q. As a smelting proposition what approximately is the lowest percentage of zinc which can be profitably handled in charging the zinc smelter—charging it with ore?— A. The lowest zinc ore that is treated in retorts is that of Belgium, and in metallurgy we generally speak of the Belgium standard, which means that the ore should not contain less than 35 per cent of zinc.

On cross-examination he was asked:

Q. Do you mean to say that an ore containing less zinc than 30 per cent, we will say, is not a zinc-bearing ore?—A. Well, metallugically you would not consider it a zinc ore since you can not make any profit in extracting the metal.

Q. But it is a zinc-bearing ore?—A. Yes; in a general way of talking.   The definition of an ore is strictly that you must be able to make a profit.   If you can not make a profit in extracting the metal it ceases to be, metallurgically speaking, an ore.

He further testified in answer to the question:

Q. If you had an ore that contained, we will say, 20 per cent of zinc and 20 per cent of lead, would it be possible to concentrate it to get the lead out and then go ahead and smelt the zinc?—A. In most cases it would. There is one celebrated case in which one has had considerable trouble, and that is in the Bolton Mills, New South Wales; but usually the lead mineral—that is, the galena—and the zinc mineral—the blende—are not so closely interwoven that you can not separate them more or less perfectly by mechanical means.

Q. Now, we have among our importations here, for example, an ore that contains 22.2 per cent of zinc and 9.5 per cent of lead; do you know of any commercial method by which it would be profitable to get the zinc out of that ore?—A. I should have to see the ore itself before I could say yes or no.

Q. There are some ores in which that is entirely possible?—A. It is possible, perhaps, with a majority of ores; but there are ores in which the lead mineral and zinc mineral are so closely interwoven that you can not separate them mechanically or by a concentration method, which is the same thing.

Q. And there are ores in which, for example, the zinc is 20.3 per cent and the lead is 20.9 per cent, and it would be quite feasible to commercially get out the zinc from the ore?—A. Yes; there are a great many ores of that kind.

Q. Or to get the lead, either?—A. Why, you separate the lead from the zinc, so you get them both.

Q. As a commercial proposition?—A. There are a great many ores, yes, of that kind.

*   *   *   *   *   *   *

Q. Is it or is it not necessary to concentrate ores in preparation for zinc smelting?—A. It is practically always done.

Q. That is an additional expense, is it?—A. Well, the zinc smelter has got nothing to do with the mechanical concentration, just as little as the lead smelter.

Q. But does the lead smelter require his—— A. He requires the zinc ore to run 35 per cent of zinc, and it is the miner's business to furnish him the material.

Q. And does it require further an absence of gangue?—A. If we have 35 per cent of zinc—call it 50 per cent blende, because zinc and sulphur form the blends—we have 50 per cent of gangue. I am guessing approximately.

*   *   *   *   *   *   *

Q. According to your definition, if an ore contained both lead and zinc in such quantities that both could be profitably extracted that ore would be both a lead-bearing and a zinc-bearing ore, would it not?—A. Yes.

Q. An ore sometimes does occur with only 10 per cent of zinc which you would consider a zinc ore?—A. If it can be concentrated mechanically before it goes to the zinc-smelting plant.

Q. But there are ores in existence having as little as 10 per cent of zinc which can have that zinc profitably extracted?—A. Yes.

Q. And as regards the lead, it runs as low as' what percentage would you say?—A. There are ores running in metal 4 per cent, and I know of ores running 3 per cent.

Q. Does it run as low in the zinc as it does in the lead?—A. I could not answer that question offhand.

On reexamination he was asked:

Q. I call your attention to one of the shipments here where the assay shows 54.5 of lead content and 10.4 of zinc content; would it be profitable to separate in an ore of that kind, assuming that it could not be mechanically concentrated, the zinc from the lead?—A. Well, it would depend on the local conditions. If the two minerals were mechanically separable why you would surely separate them, not only to recover your zinc, but in order to reduce your loss in smelting the lead.

Q. Would the process of concentration in a case of that kind—would the expense of concentration be overcome by the recovery of the zinc?  A. Yes; decidedly.

So it appears by this testimony most clearly that ores may be both zinc-bearing ores and lead-bearing ores, and that each of the ores may be recovered and the ore profitably manipulated for their recovery by the process of concentration and smelting several ores by the appropriate method. This being the case, it is hardly conceivable that Congress intended that zinc-bearing ore which also contained lead might be dutiable only for the zinc or that lead-bearing ore which contained zinc might be dutiable only for the lead. A most significant feature of this act is that while the actual smelting of zinc ores is only practicable when there is present 35 per cent of the zinc content, section 193 in very clear terms makes all zinc-bearing ore containing 10 per cent subject to duty. It is very clear from this that it was within the contemplation of Congress that ores which required mechanical treatment to concentrate them in preparation for the retort used in reclaiming the zinc should be dutiable in their crude state. Indeed this language requires that all ores containing a greater quantity than 10 per cent of zinc must be treated as zinc ores and assessed under paragraph 193. As is pointed out by the Board of General Appraisers in their opinion, Congress has provided for a duty on the metal content of ores rather than on the recovered metal itself.

It is contended that the construction of this statute should be controlled by section 24, which reads as follows:

SEC. 24. That the works of manufacturers engaged in smelting or refining, or both, of ores and crude metals, may upon the giving of satisfactory bonds be designated as bonded smelting warehouses. Ores or crude metals may be removed from the vessel or other vehicle in which imported, or from a bonded warehouse, into a bonded smelting warehouse without the payment of duties thereon and there smelted or refined, or both, together with other ores or crude metals of home or foreign production: *Provided*, That the several charges against such bonds may be canceled upon the exportation or delivery to a bonded manufacturing warehouse, established under section twenty-three of this act, of the actual amount of lead produced from the smelting or refining, or both, of such ores or crude metals: *And provided further*, That said lead may be withdrawn for domestic consumption or transferred to a bonded customs warehouse and withdrawn therefrom upon the payment of the duties chargeable against it in that condition: *Provided further*, That all labor performed and services rendered pursuant to this section shall be under the supervision of an officer of the customs, to be appointed by the Secretary of the Treasury, and at the expense of the manufacturer: *Provided further*, That all regulations for the carrying out of this section shall be prescribed by the Secretary of the Treasury.

We think this section can not be given a construction which would render unavailing an assessment on metal other than lead. The record in the case before us does not show that the importer proceeded under this section. All we have before us is the question of whether the liquidation of the collector upon the importation was correct, and we do not think that section 24 should be construed as modifying or abrogating the provisions of section 193 imposing a duty upon all zinc-bearing ores containing more than 10 per cent of zinc.

It is urged that the duty must be assessed on goods, wares, and merchandise in the condition as imported. This is accepted. But it is the zinc content of these ores when imported that is in controversy here, and the zinc content, if in excess of 10 per cent, is dutiable under the express terms of section 193.

The same consideration answers the suggestion that articles are not to be separated into their elements for the purpose of classification. There is no separation into elements of this ore. There is an ascertainment of the contents of the ore, and the duty is levied upon such contents. What happens to the ore thereafter is a matter of no concern to the collector and is not a matter which was considered by Congress in enacting the statute. This statement also answers the suggestion that chief use is controlling. It is enough to demonstrate that this ore is dutiable for the zinc content, to show that it contains in excess of 10 per cent of zinc when coupled with the fact that ordinarily ore containing both lead and zinc may be mechanically treated so as to make it commercially practicable to recover both the lead and the zinc ores.

The decision of the Board of General Appraisers is *affirmed*.

SMITH, BARBER, and DE VRIES, Judges, concur.