(C. D. 1402)

## W. R. GRACE & Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 1, 1952)

*John D. Rode* for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: On September 24, 1947, and January 31, 1948, the plaintiff herein imported shipments of what is described as tungsten-tin ore and which seems to have been a complex or mixed ore containing tungsten ore and tin ore. Tungsten ore is provided for under paragraph 302 (c) of the Tariff Act of 1930 as follows:

PAR. 302.

  *   *   *   *   *   *   *

(c) Tungsten ore or concentrates, 50 cents per pound on the metallic tungsten contained therein.

At the time of the importation of the shipments of tungsten-tin ore here involved, tin ore was entitled to free entry under the provisions

of paragraph 1785 of the same act. Duty was assessed and paid on the metallic tungsten contained in the imported ore.

Subsequent to importation, the tungsten-tin ore was sent to the plant of the Foote Mineral Co. in Exton, Pa., where it was subjected to physical and chemical operations which resulted in the manufacture or production of two products—tungsten ore concentrate and tin ore concentrate. All of the tin ore concentrate was sold domestically, as was a portion of the tungsten ore concentrate, but the remainder of the tungsten ore concentrate was exported at various dates for benefit of drawback under the provisions of section 313 (a) of the Tariff Act of 1930.

The said section 313 (a), so far as pertinent, reads as follows:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, * * *. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

No question arises as to the facts of importation of the tungsten-tin ore, its manufacture in the United States, and the exportation of the portion of the tungsten ore concentrate which was exported, or as to compliance with regulations governing drawback prescribed by the Secretary of the Treasury. It appears, however, that in liquidating the drawback entry, the collector, pursuant to departmental instructions, treated the merchandise which was exported on and after May 8, 1948, in a different manner than he did the merchandise exported prior thereto.

As to the merchandise exported prior to May 8, 1948, the duty paid on importation was distributed to the tungsten ore concentrate only, without deduction for the tin ore concentrate produced with the use of the imported ore, and the said duty accruing to the various lots of exported tungsten ore concentrate, less 1 per centum, was allowed on exportations prior to May 8, 1948.

As to the merchandise exported on and after May 8, 1948, the duty paid was distributed to the tungsten ore concentrate and to the tin ore concentrate obtained from the imported tungsten-tin ore in accordance with their relative values at the time of separation, and the duty accruing to the various lots of exported tungsten ore concentrate under this method, less 1 per centum, was allowed on exportations on and after May 8, 1948. This resulted in a large reduction in the amount of drawback payable on the exported tungsten ore concentrate.

The drawback entries here involved relate to exportations made after May 8, 1948, on which drawback was allowed in accordance

with the last-described method, and the plaintiff in the protest here involved claims that this resulted in underallowance of drawback under the provisions of section 313 (a), *supra*, and that the duty paid on importation, less 1 per centum thereof, should have been distributed to the exported tungsten ore concentrate only, without deduction for the tin ore concentrate produced.

There is no question but that the collector's action as to the drawback entries here involved was taken pursuant to departmental instructions issued by the Acting Commissioner of Customs under date of March 30, 1948, in T. D. 51878. The aforesaid instructions were published in the issue of the weekly pamphlet "Treasury Decisions" of April 8, 1948, and by their terms were to be "effective as to all products which are exported after 30 days from the publication hereof in the weekly TREASURY DECISIONS." For convenience, the entire text of T. D. 51878, as reported in 83 Treas. Dec. 115, is reproduced in the margin.[1]

Plaintiff alternatively contends that the putting into effect of such a change of practice within 30 days after the publication thereof in the Treasury Decisions was unreasonable and unlawful in view of the fact that it was known by the Treasury Department and the Bureau

---

[1]

(T. D. 51878)

*Drawback*

Procedure amended for liquidating drawback entries covering articles manufactured with the use of merchandise on which the amount of duty paid is computed on the basis of the component elements of such merchandise

TREASURY DEPARTMENT,
OFFICE OF THE COMMISSIONER OF CUSTOMS,
*Washington, D. C., March 30, 1948*

*To Collectors of Customs and Others Concerned:*

In the establishment of rates of drawback covering articles manufactured with the use of an ore, in connection with which the amount of duty paid is computed on the basis of the metallic content of the ore, the Bureau has authorized the liquidation of drawback entries on the basis of the duty paid on the quantity of ore used without a deduction for waste even though the waste was valuable. This action was taken on the theory that the metal in the ore, which metal was the basis for computing the amount of duty paid, did not contribute to the value of the waste.

The Bureau has also authorized the liquidation of drawback entries covering ethyl alcohol manufactured under drawback regulations with the use of imported molasses without a distribution of drawback to the fusel oil, a product resulting in addition to the ethyl alcohol. This action was taken on the theory that the fusel oil concerned resulted from a nondutiable element of the merchandise used.

The above-mentioned cases are merely examples of the types of cases referred to herein and shall not be construed as representing all the cases covered hereby.

As duty is collected on the article which passes through customs, and not on the content thereof which only furnishes the measure for the duty, the Bureau is of the opinion that the drawback rulings of the above-mentioned nature should be amended.

Accordingly, in all cases where a valuable waste or a product is obtained in the manufacture of articles for exportation with benefit of drawback, the value of the waste or product shall be taken into consideration in the liquidation of the drawback entry, even though it is alleged that the waste or product results from a nondutiable element of the merchandise used.

This decision shall be effective as to all products which are exported after 30 days from the publication hereof in the weekly TREASURY DECISIONS.

All rates of drawback now in effect, authorizing the allowance of drawback on articles manufactured under drawback regulations, which contain instructions relating to the liquidation of drawback entries contrary to the instructions contained herein, are hereby amended to comply herewith.

FRANK DOW,
*Acting Commissioner of Customs.*

of Customs that from 3 to 5 months were required for the completion of the process of manufacture which resulted in the merchandise exported on which drawback is claimed.

It is clear from a reading of T. D. 51878 that the prior practice, which was followed in the liquidation of drawback entries involving tungsten ore concentrate exported prior to May 8, 1948, was based—

* * * on the theory that the metal in the ore, which metal was the basis for computing the amount of duty paid, did not contribute to the value of the waste * * *.

(It should be noted that "waste" in the sense used in the treasury decision obviously means material produced other than that exported, and in this sense includes the tin ore concentrate such as is involved herein.)

The prior practice was changed, according to the Treasury decision, because of a new viewpoint or approach to the matter as follows:

As duty is collected on the article which passes through customs, and not on the content thereof which only furnishes the measure for the duty, the Bureau is of the opinion that the drawback rulings of the above-mentioned nature should be amended. [Italics added.]

In other words, as applied to the situation in the case at bar, it was the Bureau's or Department's view that the duty paid on importation *was paid on the complex or mixed tungsten tin ore*, and that the drawback should be apportioned or distributed among the products which resulted from the manufacture of that ore. In this viewpoint, the fact that the duty was calculated upon the basis of the metallic tungsten contained in the ore is immaterial, as merely furnishing the measure, i. e., the amount, of duty to be paid on the imported ore.

We are of the opinion that this viewpoint is fallacious. We are convinced that the import duty was not levied or assessed on the imported ore, but on the metallic tungsten contained therein, i. e., on tungsten in the form of ore. A mere reading of the language of the statute, paragraph 302 (c), *supra*, shows that the duty is not levied on the ore, but on the metallic tungsten contained therein. The statute reads:

Tungsten ore or concentrates, 50 cents per pound *on the metallic tungsten contained therein.* [Italics added.]

This form of language in the imposition of duty on metals imported in ores has been used in many tariff acts, and it has consistently been interpreted by the courts as imposing a duty on the metallic content of the ore, rather than on the ore itself. This was brought out clearly in the case of *Consolidated Kansas City Smelting & Refining Co.* v. *United States*, 1 Ct. Cust. Appls. 472, T. D. 31509. That case involved the importation of an ore which contained both

lead and over 10 per centum of zinc. Paragraph 181 of the Tariff Act of 1909 imposed a duty as follows:

Lead-bearing ore of all kinds, one and one-half cents per pound on the lead contained therein * * *.

and paragraph 193 of the same act imposed a duty as follows:

Zinc-bearing ore of all kinds, * * * containing ten per centum or more of zinc and less than 20 per centum, one-fourth of one cent per pound on the zinc contained therein * * *.

The collector took duty under both paragraphs, and the importer protested such assessment, urging, among other things, the same viewpoint that the Bureau of Customs adopted in T. D. 51878, *supra*, viz, that it was the ore which was the imported merchandise and made dutiable, and that the metallic content of the ore merely furnished the measure for the duty, and that to make the same ore pay duty under two provisions was to tax the same ore twice.

In both this court and the Court of Customs Appeals, this argument was rejected, and it was held that it was the *metal content* of the ore that was made dutiable. The late Judge Fischer, writing the opinion of this court (reported in 19 Treas. Dec. 688, T. D. 30727), said, among other things:

* * * The paragraphs merely seek to levy duty on lead and zinc entering the United States in the form of ore.

and our appellate court, affirming the decision and judgment of this court, said, among other things:

* * * There is an ascertainment of the contents of the ore, and the duty is levied upon such contents.

The provision in paragraph 302 (c) of the present tariff act for the imposition of duty on the tungsten contained in tungsten ore is couched in the same language as was employed in the provisions of the Tariff Act of 1909 for lead and zinc contained in ores, which provisions were construed in the cited case. Such language has received consistent construction since. See *American Smelting & Refining Co.* v. *United States*, 13 Ct. Cust. Appls. 507, T. D. 41391.

It is true that in the provision in the present act for zinc-bearing ores (paragraph 393), Congress inserted a provision that the duty on zinc contained in ore "shall not be applied to the zinc contained in lead or copper ores unless actually recovered," but the very expression of this proviso denotes it an exception to the rule which otherwise applies.

Since the import duties collected in this case were actually levied and paid on the tungsten content of the imported tungsten-tin ore, i. e., on tungsten in the form of ore, rather than on the tungsten-tin ore itself, it must follow that the tungsten content was the imported duty-paid merchandise within the purview of the drawback statute,

section 313 (a), *supra*. The drawback statute operates only on *duty-paid* imported merchandise. There was no duty levied on the tungsten-tin ore as such, and hence it was not the "imported merchandise" referred to in section 313 (a), *supra*.

Under these circumstances, the exported tungsten ore concentrate was the only article which was manufactured or produced in the United States with the use of the imported duty-paid tungsten content of the tungsten-tin ore, or tungsten in the form of ore, and, consequently, the collector erroneously considered the tin ore concentrate to be a product resulting from the manipulation of the imported merchandise, and improperly distributed a portion of the drawback to it. The protest claim must therefore be sustained.

This disposition of the matter makes unnecessary a consideration of plaintiff's alternative contention that the putting into effect of a change of administrative practice 30 days after publication in the weekly "Treasury Decisions" was unreasonable and unlawful.

Judgment will therefore issue sustaining the protest claim and directing the collector of customs to reliquidate the drawback entries involved, allowing as drawback the full amount of the duties paid, less 1 per centum thereof, on the metallic tungsten content of the ore used in the manufacture or production in the United States of the exported tungsten ore concentrate.