| Protest number | Entry number | Case number | Item number |
|---|---|---|---|
| 183326–K/40514 | DE 5248 | 4935–4941 | 4035 |
| | | 4964–4968 | 4013 |
| | | 4969 | 4030 |
| | | 4970–4973 | 4051 |
| | | 4981 | 4007 and 4052 |
| | | 4983–4984 | 4034 |
| | | 4985 | 4034 |
| | | | 4052 |
| | | 4986–4987 | 4038 |
| | | 4988 | 4038 |
| | | | 4013 |
| | | 4989 | 4030 |
| | | | 4054 |
| | | 4990 | 4033A |
| | | | 4020 |
| | | | 4035 |
| | | | 4050 |
| | | 4991 | 4037 |
| | | | 4038 |
| | | | 4034 |
| | | | 4018 |
| | | | 4030 |
| | | 4992 | 4051 |
| | | | 4052 |
| | | 4993 | 4018 |
| | | 4982 | 4007 |

BEFORE THE SECOND DIVISION, AUGUST 23, 1956

**No. 60181.**—C. J. Tower & Sons *v.* United States, protests 222702–K, etc. (Buffalo).

Opinion by LAWRENCE, J.   In accordance with stipulation of counsel that the merchandise consists of sulphur ore the same in all material respects as that the subject of *C. J. Tower & Sons* v. *United States* (34 Cust. Ct. 55, C. D. 1678), the claim of the plaintiff was sustained.

### DISSENTING OPINION

FORD, Judge:  The issue presented in this case was originally before us in *C. J. Tower & Sons* v. *United States*, 34 Cust. Ct. 55, C. D. 1678.   I dissented in that case, and I hereby register a second dissent in this case.   The fact that counsel for the respective parties have agreed that the merchandise in the two cases is

similar in all material respects does not change the issue in the two cases, nor has it in any way altered the conclusion which I feel should be reached in the two cases. This conclusion is amply supported and fortified by the authorities cited and quoted in my former dissent. I here quote from my former dissent as follows:

* * * The collector first classified the involved merchandise as "pyrites," which counsel have agreed is a sulphur ore, and accorded free entry to such merchandise under paragraph 1777 of the Tariff Act of 1930. Thereafter, the collector found that the "pyrites" or sulphur ore contained a certain amount of lead, and he thereupon levied duty at the rate of three-fourths of 1 cent per pound upon the lead contained therein under the provisions of paragraph 391 of said act, treating the "pyrites" or sulphur ore as a lead-bearing ore.

All the dictionary definitions and other authorities quoted by the majority are devoted entirely to defining "ore." With the definition of ore, as given in those authorities, I am in accord. I am unable to see how the definitions of an "ore" would give any indication of what constitutes a lead-bearing ore. No duty was levied upon any ore in this case. Duty was levied only upon the lead contained in a lead-bearing ore. Since the Congress has used both the terms, "ore" and "lead-bearing ore," this would appear to constitute a clear congressional distinction between the two terms. Therefore, definitions of what constitutes an "ore" would give no indication of what constitutes a "lead-bearing ore."

Paragraph 181 of the Tariff Act of 1897 provided in part as follows:

181. Lead-bearing ore of all kinds, one and one-half cents per pound on the lead contained therein: * * *

So far as here pertinent the above-quoted paragraph and paragraph 391, here under consideration, are practically identical. *Cockerill Zinc Co.* v. *United States*, 13 Treas. Dec. 125, T. D. 27891, decided February 5, 1907, involved the proper classification of certain zinc ores. In deciding that case the United States Board of General Appraisers concluded as follows:

Our conclusion is that the carbonates and silicates of zinc are included within the meaning of the term calamine as used in paragraph 514, and that they are free of duty under said paragraph and also under paragraph 614, and that the sulphide of zinc is free under the paragraph last named as crude minerals, etc., subject, however, to the qualification that when lead is found in these ores duty shall be taken on the amount of lead contained therein as described in paragraph 181.

While the above decision did not in precise words define "lead-bearing ore" as an ore which contained lead, nevertheless, such a holding is implicit in the quotation, *supra*, "that when lead is found in these ores duty shall be taken on the amount of lead contained therein." Thus, the Congress has been advised since 1907 that lead-bearing ores are ores which contain lead. This is significant in view of the language contained in paragraph 391 of the Tariff Act of 1930 as follows:

Lead-bearing ores, flue dust, and mattes of all kinds, 1½ cents per pound on the lead contained therein; *Provided*, that such duty shall not be applied to the lead contained in copper, gold, or silver ores, or copper mattes, unless actually recovered: * * *

I am not able to place any construction upon the foregoing proviso except that when the Congress exempted from the duty of 1½ cents per pound the lead contained in "copper, gold, or silver ores, or copper mattes," it thereby expressed in clear terms its intention to make the duty of 1½ cents per pound apply to the lead contained in all other lead-bearing ores, whether or not recovered or recoverable. The above views find confirmation in the case of *United States* v. *Brewster*, decision by Burns, district judge for Texas, reported as T. D. 29006. As stated by the court, "The importations involved in the several protests consist of zinc ore * * *." A more detailed description of the merchandise was given in the decision of this case in the Circuit Court of Appeals, Fifth Circuit, 167 Fed. 122, as follows:

The imported ores, broadly described, were: (a) Concentrated sulphides containing 28 per cent. zinc and 2 per cent. lead. (b) Carbonates crushed and hand-picked, containing 28 per cent. zinc and 7 per cent. lead. (c)

Carbonates and silicates combined, crushed and hand-picked (21 to 35 per cent. carbonate, 2 to 26 per cent. silicate), in some less than 1 per cent. of lead, and in others no lead.

In disposing of the case, Burns, district judge said:

In so far as the specific duty is concerned the question presents no difficulty; the language clearly and specifically provides that the lead contents shall be subject to duty at the rate assessed by the collector.

In affirming the decision of the Circuit Court, the Circuit Court of Appeals, Fifth Circuit, said:

PER CURIAM. Under the facts in this case it is not necessary to decide whether the provision for lead-bearing ores in paragraph 181, Tariff Act of July 24, 1897, * * * is exclusive. On the merits the Board of General Appraisers and the Circuit Court ruled correctly.

The judgment of the Circuit Court is affirmed.

The provision for lead-bearing ores, construed in the above decisions, was as follows:

Lead-bearing ore of all kinds, one and one-half cents per pound on the lead contained therein: * * *.

Since lead-bearing ore was the only kind of ore made dutiable on the lead content, or the lead contained therein, under paragraph 181, *supra*, the court could not have held dutiable the lead contained therein, without an affirmative holding that zinc ore containing less than 1 per cent of lead was a lead-bearing ore. It is my view, therefore, that the above authorities require a holding that the lead contained in the instant sulphur ore should be held dutiable at three-fourths of 1 cent per pound, as lead-bearing ore, as classified by the collector.

In the cases alluded to above, the courts have held a zinc ore containing less than 1 per cent of lead to be a lead-bearing ore.

*   *   *   *   *   *   *

In the case of *American Smelting & Refining Co.* v. *United States*, 13 Ct. Cust. Appls. 507, T. D. 41391, the merchandise involved consisted of irrecoverable zinc in lead ore. In disposing of that case, the Court of Customs Appeals said:

There is nothing in the language or circumstances surrounding the passage and approval of the Tariff Act of 1922 that leads us to the conclusion that metals lost in the smelting and refining processes in bonded smelters were to be admitted free. It is true that a reasonable allowance must be made by the Secretary of the Treasury for wastage. It is also true that if the zinc content is less than 10 per centum, it is not dutiable. If Congress had intended to make a change in this respect it might easily have done so with few words. General Appraiser Fischer very aptly points out, in the opinion of the court below, that in paragraph 392, the paragraph imposing duties upon lead bearing ores and mattes, this significant exception is made, which did not appear in the equivalent paragraph in the tariff act of October 3, 1913:

*Provided*, That such duty shall not be applied to the lead contained in copper mattes unless actually recovered.

*   *   *   *   *   *   *

* * * Retaining the recoverable product of his operations, he seeks the destruction of the irrecoverable residue and the cancellation, thereby, of a part of his bonded obligation. We believe that to so hold would be to accomplish by indirection what we have said, herein, we cannot do by direction.

The holding in the case of *Consolidated Kansas City Smelting & Refining Co.* v. *United States*, 1 Ct. Cust. Appls. 472, T. D. 31509, is to the same effect as the decision in the *American Smelting and Refining Co.* case, *supra*, the gist of the decision being succinctly stated in the second paragraph of the syllabus, as follows:

2. LEAD-BEARING AND ZINC-BEARING ORES.

A commodity, it is true, is properly assessable in its condition as imported, but where ore, as here, is shown to have contained, as imported, both lead

and zinc, the zinc appearing in a quantity exceeding 10 per cent, the metal content in both is dutiable, the lead under paragraph 181, the zinc under paragraph 193, tariff act of 1909.

In addition to the above, and because of what I consider to be its controlling effect upon the issue in the instant case, the following is quoted from *United States* v. *Consolidated Kansas City Smelting & Refining Co. et al.*, 18 C. C. P. A. (Customs) 346, T. D. 44610:

> \* \* \* The ores were smelted and refined for the recovery of copper, gold, and silver in the bonded warehouse established by appellee in pursuance to the statute. The record discloses that the metal to be recovered from the ore was copper, with incidental recovery of gold and silver, and that in the process of smelting to recover the copper, gold, and silver, the lead, which is the merchandise represented by the different protests ranged *in quantity from 5.8 per centum to one-half of 1 per centum*, was totally lost. \* \* \* [Italics mine.]

> \* \* \* \* \* \* \*

> The court below, in an opinion written by Chief Justice Fischer, attempted to distinguish this case from the *American Smelting & Refining Co.* case, *supra*, and in a lengthy decision, which was evidently given much consideration, arrived at its conclusion by reasoning, which, if applied to its former decision, also written by Chief Justice Fischer, and affirmed by this court in *American Smelting & Refining Co.* v. *United States*, *supra*, would challenge the correctness of the decision of that court and this court in that case.

> \* \* \* \* \* \* \*

> The first paragraph of paragraph 392 of the Tariff Act of 1922 reads as follows:

> PAR. 392. Lead-bearing ores and mattes of all kinds, 1½ cents per pound on the lead contained therein: *Provided*, That such duty shall not be applied to the lead contained in copper mattes unless actually recovered \* \* \*.

It will be observed that Congress by its proviso expressly provided that lead, if "contained in copper mattes unless actually recovered," shall not be dutiable. There is no contention in the case at bar that the imported ores are copper mattes. If Congress had intended that lead contained in copper ore, such as that at bar, should not be dutiable unless actually recovered, it would have been a very simple matter to have said so while it was framing the proviso. The absence of such a provision strongly suggests to us that it intended that lead when imported in the condition as at bar should be dutiable, which is agreeable to our conclusion in *American Smelting & Refining Co.* v. *United States*, *supra*.

In the instant case the importer and the court below attempt to differentiate the facts in this case from the facts in the *American Smelting & Refining Co.* case, *supra*, by stating that in the former case there was a dutiable metal produced—lead—which could be withdrawn from Government custody and thus give effect to the condition of the bond, while here the complete loss of the only dutiable metal has rendered impossible a compliance with the words of the bond. If we are correct in our conclusion that Congress by the proviso intended only to make free of duty lead which was contained in copper mattes, the reasoning of the importer and the court below is without supporting foundation.

It is pointed out and very earnestly urged that Congress could not have contemplated levying a duty upon lead which was not recovered or recoverable. The same argument was made in *American Smelting & Refining Co.*, *supra*, and notwithstanding this fact this court in its decision said:

> There is nothing in the language or circumstances surrounding the passage and approval of the Tariff Act of 1922 that leads us to the conclusion that metals lost in the smelting and refining processes in bonded smelters were to be admitted free. It is true that a reasonable allowance must be made by the Secretary of the Treasury for wastage. It is also true that if the zinc content is less than 10 per centum it is not dutiable. If Congress had intended to make a change in this respect it might easily have done so with few words. General Appraiser Fischer very aptly points out, in the opinion

of the court below, that in paragraph 392, the paragraph imposing duties upon lead-bearing ores and mattes, this significant exception is made which did not appear in the equivalent paragraph in the Tariff Act of October 3, 1913:

\* \* \* *Provided,* That such duty shall not be applied to the lead contained in copper mattes unless actually recovered.

We can not agree that Congress did not intend to make lead contained in copper ore dutiable, regardless of its recoverability. The lead was in the ore, and, while it is not in any sense regarded as important to this case, we can see no reason why all the other materials in the ore might not have been sacrificed for the recovery of the lead if prices and commercial conditions justified such action. At any rate Congress has definitely stated the particular circumstances under which lead contained in lead-bearing ores is not to be dutiable and we regard this as significant.

The protests should have been *overruled,* and the judgment of the United States Customs Court is *reversed.*

If, as held in the above case, Congress intended to make lead contained in ore dutiable, regardless of its recoverability, I can see no escape from the conclusion that the lead contained in the present ore is dutiable as assessed by the collector. The lead was in the ore, as found by the collector, when it was imported into the United States. The Congress has, in clear language, stated the particular circumstances under which lead contained in ores is not to be dutiable. The instant lead does not fall within the particular exception made by Congress. In my opinion, the lead contained in the instant ores is dutiable as assessed by the collector, and a failure to so hold constitutes a renouncement of all the principles announced in the authorities hereinbefore cited and quoted from. The greater portions of those decisions are by the Court of Customs Appeals and the Court of Customs and Patent Appeals and other appellate courts. So long as those decisions remain unreversed and unmodified, I shall endeavor to follow them.

In view of the fact that it was held in the *Brewster* case, *supra,* that an ore containing less than 1 percent of lead was a lead-bearing ore, and in the *Kansas City Smelting & Refining Co.* case, *supra,* it was held that an ore containing less than one-half of 1 percent of lead was a lead-bearing ore, and in view of the further fact that, since the *Brewster* decision and the *Kansas City Smelting & Refining Co.* decision, the Congress has reenacted the paragraph there construed in each successive tariff act in practically identical language, this appears to be a strong case for the application of the rule of legislative approval of judicial construction.

In each of the "lead-bearing ore" paragraphs since the Tariff Act of 1897, the Congress appears to have made it clear that it intended to levy duty upon any and all lead contained in lead-bearing ores, regardless of whether such lead is recovered or recoverable. This, in my opinion, precludes the application of the rule of *de minimus non curat lex* invoked by the majority opinion herein. I would, therefore, hold the involved ore to be a lead-bearing ore, and the lead contained therein to be dutiable as assessed by the collector.